NEW AMSTERDAM CASUALTY COMPANY *v.* STATE.

4-5224                                          121 S. W. 2d 75

Opinion delivered November 7, 1938.

*Buzbee, Harrison, Buzbee & Wright,* for appellant.

*D. G. Beauchamp,* for appellee.

HUMPHREYS, J. This suit was brought in the chancery court of Pulaski county by appellee against M. E. Sherland, Purchasing Agent for the state of Arkansas and his bondsman, New Amsterdam Casualty Company, and H. E. Hill on allegations that on the 10th day of May, 1932, and for the remainder of said year and the first three months of 1933, Sherland, whose duty it was to make sales of all cotton produced by the operation of the state of Arkansas on competitive bids to the best advantage of the state and to account to the state for all the proceeds thereof, sold to various cotton buyers 3,085 bales of cotton belonging to the state for $107,879.05 and out of the proceeds paid to the state $102,421.21, leaving a balance of $5,397.84 which he failed and refused to pay into the treasury of the state or to his successor in office as required by his bond; and on the further allegations that appellants, Sherland and Hill, fraudulently and illegally entered into an understanding and agreement between themselves, in order to defraud the state out of monies due it from the sale of the state's cotton, that appellant, Sherland, would place the samples of the state's cotton in the sample room of the appellant, Hill, so that Hill might sell the cotton as his own; and de-

ducted from the price received by him the amount the state sued for, and that he might then pay to the state only the difference between the amount paid for the cotton and the amount taken out by him.

Answers were filed admitting that during said period of time M. E. Sherland was the Purchasing Agent of the State of Arkansas, and that it was his duty to sell all cotton produced by the operation of the state penitentiary on competitive bids to the best advantage of the state, and that appellant, New Amsterdam Casualty Company, executed a bond to the state for the faithful performance of his duty, but denied all other material allegations in the complaint.

The cause was submitted upon the pleadings, and agreed statement of facts and the exhibit attached thereto, the certified copy of the indemnity bond and the depositions of witnesses from all of which the trial court found that the allegations in appellee's complaint were fully sustained, and rendered judgment in favor of appellee against all of the appellants, for $3,782.71, with interest thereon from the first day of July, 1933, to date at the rate of 6 per cent. per annum, from which is this appeal.

The exhibit attached to the agreed statement of facts and the testimony of H. E. Hill reflects that during the period of time from April 12, 1932, to January 6, 1933, 2,392 bales of cotton produced by the state penitentiary was sold for $83,226.10 and out of said amount H. E. Hill paid into the treasury of the state $79,443.39, and that he retained $3,782.71. A sample of each bale was placed on tables in the office of H. E. Hill either in Little Rock or Memphis where bidders might inspect them. The bidders placed their bids in sealed envelopes and delivered them to H. E. Hill, and he, in turn, delivered them along with the bid of his proposed purchasers, which bids were in his handwriting, without any knowledge on their part that he had made a bid for them. His proposed purchasers had offered a higher price for the cotton per pound than his bid for them indicated, but in every instance the bids he made for them were

higher bids than the bids made by other buyers or purchasers. The bids made by him for his proposed purchasers were accepted by M. E. Sherland, the Purchasing Agent. When the cotton was shipped to the proposed purchasers it was not shipped in the name of the state, but was shipped in the name of H. E. Hill, and these purchasers paid Hill for the cotton at the price per pound they had agreed to give for the cotton. In paying him, Hill directed that they make the payment in two checks, one to the state for the price per pound he had bid for them and the other directly to him for the difference between the amount he had bid for them, and the amount he actually received for the cotton. In an attempted explanation of why he had not paid Sherland or the state the entire amount he received for the cotton he said: "The state of Arkansas was not permitted to pay a commission or anything else, and the only way the cotton broker had to make a penny was through the buyer. If I had bid the full amount of the bid, I would have been a sap. That's the only way I had, only possible chance of making a nickel was out of the buyer. The state did not pay a commission."

Referring to the exhibit attached to the agreed statement of facts, which showed the parties to whom the cotton was shipped, and the amount of money that was paid by them for the cotton to H. E. Hill and the amount of the checks issued to the state and the amount of the checks issued to H. E. Hill in payment for the cotton, H. E. Hill was asked: "I will ask you this—In all of these instances through here and, in other instances, how was the cotton bought? At private sale or on competitive bids? A. Competitive bids. Q. Were they in your own name? A. No, not a single bid was in my name. I acted as agent for others." The buyers to whom the cotton was shipped in the name of Hill testified that Hill was not acting as their agent, and that he was not authorized to make bids for them.

The sum total of the evidence is that M. E. Sherland allowed Hill to take over duties as Purchasing Agent for the state in the sale of the state's cotton and

sell it in such a way that he (Hill) could make a profit or commission out of selling it contrary to law. He sold it for a much higher price to his prospective purchasers than his false and fraudulent bids indicated, and when he collected for the cotton he had the purchasers issue two checks, one to the state for the amount represented by his fraudulent bid, and one to himself for the difference between the fraudulent bid and the price he actually received for the cotton. The transaction was a subterfuge to circumvent the law, and Hill could not have perpetrated the fraud without the aid, knowledge and consent of M. E. Sherland, the Purchasing Agent of the state. The arrangement between M. E. Sherland and H. E. Hill relative to the sale of the state's cotton resulted in the state failing to get the market value for its cotton. The testimony reflects that the purchasers from Hill would have paid the state or the Purchasing Agent just as much for the cotton as they paid Hill for it. The transactions between M. E. Sherland and H. E. Hill relative to the sale of the cotton resulted in a loss to the state of $3,782.71. Sherland did not sell the cotton on competitive bids to the advantage of the state, but permitted it to be sold by Hill at a loss to the state. He permitted Hill to bid a less amount than the cotton could be sold for on the market in the name of buyers Hill did not represent, and then shipped the cotton in Hill's name to such buyers who paid Hill more for it than the fictitious bid and accepted the amount represented by the fictitious bid in full payment for the state's cotton and converted the difference to his own use. This fraud could not have been perpetrated on the state by H. E. Hill without M. E. Sherland had been his co-conspirator in the transactions.

The state met the burden resting upon it to prove a united action on the part of Hill and Sherland to cheat the state, and that the conspiracy between them resulted in a loss or damage to the state in the sum of $3,782.71. In other words, the facts and circumstances surrounding these transactions bring this case within the wholesome rule of law announced in 12 C. J. 632, as follows:

"In a civil action for damages, where it is sought to charge several as co-conspirators, the burden is on plaintiffs to prove a combination, and united action on the part of defendants to do an unlawful act or a lawful act by unlawful means, and also to prove that the act committed in pursuance of the conspiracy resulted in damage to plaintiff."

No error appearing, the decree is affirmed.

GRIFFIN SMITH, C. J., disqualified and not participating.